UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | | |
|---|---|---|
| APRIL QUAY, individually and on behalf of all others similarly situated | § § § § | Civil Action No. _____ |
| *Plaintiff*, | § § § | JURY TRIAL DEMANDED |
| v. | § § § | COLLECTIVE ACTION |
| MONARCH HEALTHCARE MANAGEMENT LLC., | § § § | PURSUANT TO 29 U.S.C. § 216(b) |
| *Defendant*. | § § § | CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff April Quay brings this action individually and on behalf of all current and former nurses (hereinafter "Plaintiff and the Putative Class Members") who worked for Monarch Healthcare Management LLC ("Monarch" or "Defendant"), anywhere in the United States, at any time during the relevant statutes of limitation through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207, and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b), the Minnesota Fair Labor Standards Act, MINN. STAT. ANN. § 177.25 *et seq.* ("MFLSA"), the Minnesota Payment of Wages Act, MINN. STAT. ANN. § 181.101 *et seq.* ("MPWA"), and the Minnesota Code of Regulations on Wages and Labor, MINN. R. 5200.0010 *et seq.* ("MCRW") (collectively the "Minnesota Wage Statutes").

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the Minnesota state law claims are asserted as a class action under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts

of others.

# I.
# OVERVIEW

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19 and a class action pursuant to the laws of Minnesota, and FED. R. CIV. P. 23, to recover unpaid overtime wages, straight-time wages, and other applicable penalties.

2. Plaintiff and the Putative Class Members are those persons who worked for Monarch as non-exempt nurses and were responsible for assisting patients in Monarch facilities, anywhere in the United States, at any time during the relevant statutes of limitation, through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of overtime in violation of state and federal law.

3. Although Plaintiff and the Putative Class Members have routinely worked in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. During the relevant time period, Monarch knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis during the relevant time periods.

5. Specifically, Monarch's regular practice—including during weeks when Plaintiff and the Putative Class Members worked in excess of 40 hours (not counting hours worked "off-the-clock")—was (and is) to automatically deduct a 30-minute meal-period from Plaintiff

and the Putative Class Members' daily time even though they regularly worked (and continue to work) "off-the-clock" through their meal-period breaks.

6. The effect of Monarch's practices were (and are) that all time worked by Plaintiff and the Putative Class Members was not (and is not) counted and paid; thus, Monarch has failed to properly compensate Plaintiff and the Putative Class Members for all of their hours worked and resultingly failed to properly calculate Plaintiff and the Putative Class Members' overtime under the FLSA and Minnesota state law.

7. Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or Minnesota law.

8. Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight-time and other damages owed under the Minnesota Wage Statutes as a class action pursuant to Federal Rule of Civil Procedure 23.

9. Plaintiff also prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10. Plaintiff also prays that the Rule 23 class is certified as defined herein, and that Plaintiff Quay designated herein be named as the Class Representative for the Minnesota Class.

## II.
## THE PARTIES

11. Plaintiff April Quay ("Quay") was employed by Monarch in Minnesota during the relevant time period. Plaintiff Quay did not receive compensation for all hours worked or

the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12. The FLSA Collective Members are those current and former nurses who were employed by Monarch, anywhere in the United States, and at any time from August 5, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Quay worked and was paid.

13. The Minnesota Class Members are those current and former nurses who were employed by Monarch in Minnesota, at any time from August 5, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Quay worked and was paid.

14. Defendant Monarch Healthcare Management LLC is a foreign limited liability company, licensed to and doing business in the state of Minnesota. Monarch Healthcare Management LLC may be served through its registered agent for service of process: **Joshua Legum, 638 Southbend Avenue, Mankato, Minnesota 56001**.

## III.
## JURISDICTION & VENUE

15. This Court has federal question jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

16. This Court has supplemental jurisdiction over the additional Minnesota state law claims pursuant to 28 U.S.C. § 1367.

17. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

---

[1] The written consent of April Quay is attached hereto as Exhibit "A."

18. This Court has personal jurisdiction over Monarch because the cause of action arose within this district as a result of Monarch's conduct within this District and Division.

19. Venue is proper in the District of Minnesota because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

20. Specifically, Monarch's corporate headquarters are located in Mankato, Minnesota which is located within this District and Division.

21. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## ADDITIONAL FACTS

22. Defendant Monarch Healthcare Management LLC provides short term rehabilitation and long-term healthcare services to its live-in patients throughout the state of Minnesota.[2]

23. To provide its services, Monarch employed (and continues to employ) numerous workers—including Plaintiff and the individuals that make up the putative or potential class. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work throughout the State of Minnesota.

24. Plaintiff Quay was employed by Monarch in Faribault, Minnesota from approximately July of 2018 until January of 2020.

25. Plaintiff and the Putative Class Members are (or were) non-exempt nurses employed by Monarch for the relevant time-period preceding the filing of this Complaint through the final disposition of this matter.

---

[2] https://monarchmn.com/

26. Importantly, none of the FLSA exemptions relieving a covered employer (such as Monarch) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Class Members.

27. Moreover, Plaintiff and the Putative Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Monarch resulting in the complained of FLSA and Minnesota Wage Statutes violations.

28. Plaintiff and the Putative Class Members are non-exempt nurses who were (and are) paid by the hour.

29. Plaintiff and the Putative Class Members typically worked approximately twenty (20) to forty (40) "on-the-clock" hours per week.

30. In addition to their twenty (20) to forty (40) "on-the-clock" hours, Plaintiff and the Putative Class Members worked up to four (4) hours "off-the-clock" per week and have not been compensated for that time.

### Unpaid Lunch Breaks

31. Monarch has a policy wherein it automatically deducts at least one, and as many as two, 30-minute meal periods from Plaintiff and the Putative Class Members' daily time.

32. Non-exempt Nurses, such as Plaintiff and the Putative Class Members, automatically have thirty (30) minutes per day for a meal period deducted from his or her hours worked if they work eight (8) or fewer hours in a day. Monarch will deduct one full hour for a meal period from Plaintiff and the Putative Class Members' hours worked if they work more than eight (8) hours in a day.

33. Moreover, Monarch does not completely relieve Plaintiff and the Putative Class Members from duty during their day for the purposes of taking a meal break. Plaintiff and the Putative Class Members are required to perform duties, whether active or inactive, during all

hours of their shift and frequently are unable to receive sufficient time to eat a meal due to their constant patient calls and duties.

34. Although Monarch does allow Plaintiff and the Putative Class Members to apply for a meal period correction when they are completely unable to take any amount of time off during their day for a meal break, these requests are frequently denied by supervisors.

35. Specifically, Monarch supervisors regularly deny requests, claiming they cannot approve the request because the requesting Plaintiff or Putative Class Member cannot prove they did not take a break. Supervisors in this way, ignore the evidence before them (the worker's report) and impermissibly shift the burden of proof to Plaintiff and the Putative Class Members to prove a negative.

36. Monarch was (and continues to be) aware that Plaintiff and the Putative Class Members regularly worked (and continue to work) through their meal periods without pay in violation of the FLSA and the Minnesota Acts.

37. When calculating Plaintiff and the Putative Class Members' hours each pay period, Monarch deducted (and continues to deduct) thirty minutes to one hour from Plaintiff and the Putative Class Members' daily on-the-clock hours in violation of the FLSA.

38. In other words, for each 3-day workweek, Monarch deducted (and continue to deduct) a minimum of 1.5 hours from each workweek's total "on-the-clock" hours. For a 5-day workweek, Monarch deducted (and continue to deduct) a minimum of 2.5 hours from each workweek's total "on-the-clock" hours.

39. Monarch's systematic deduction of 30-minute to one hour meal periods from Plaintiff and the Putative Class Members' "on-the-clock" time resulted (and continues to result) in Plaintiff and the Putative Class Members working straight time hours and overtime

hours for which they were (and are) not compensated at the rates required by the FLSA and the Minnesota Wage Statutes.

40. Monarch's systematic deduction of 30-minute to one hour meal periods from actual hours worked at or below forty (40) hours per workweek and actual hours worked in excess of 40 hours per workweek deprived (and continues to deprive) Plaintiff and the Putative Class Members of the required and proper amount of straight time pay and overtime pay in violation of the FLSA and Minnesota Wage Statutes.

41. For example, during the month of August of 2018, Plaintiff regularly worked more than forty (40) hours each week, including time worked through meal periods, but was not paid overtime compensation for each hour worked in excess of forty (40) in those workweeks because Monarch automatically deducted meal periods that she worked through from her pay.

42. As a result of Monarch's failure to compensate Plaintiff and the Putative Class Members for performing work "off-the-clock," Plaintiff and the Putative Class Members worked straight time hours and overtime hours for which they were not compensated.

43. Monarch's failure to compensate Plaintiff and the Putative Class Members for their "off-the-clock" straight time hours violated (and continues to violate) the Minnesota Wage Statutes.

44. Monarch's failure to compensate Plaintiff and the Putative Class Members for their "off-the-clock" overtime hours violated (and continues to violate) the FLSA.

45. Monarch knew or should have known that it was (and is) miscalculating Plaintiff and the Putative Class Members' regular rates of pay and that the proper amount of overtime compensation was not being paid to Plaintiff and the Putative Class Members in violation of the FLSA.

46. Monarch knew or should have known that its failure to pay the correct amount of straight time and overtime to Plaintiff and Putative Class Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Class Members.

47. Monarch knew or should have known that causing and/or requiring Plaintiff and the Putative Class Members to perform necessary work "off-the-clock" would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Class Members.

48. Because Monarch did not pay Plaintiff and the Putative Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Monarch's pay policies and practices willfully violate the FLSA.

49. Because Monarch did not pay Plaintiff and the Putative Class Members for all straight-time hours worked, Monarch's pay policies and practices also willfully violate the Minnesota Wage Statutes.

## V.
## CAUSES OF ACTION

### COUNT ONE
**(Collective Action Alleging FLSA Violations)**

**A.   FLSA COVERAGE**

50. Paragraphs 1–49 are fully incorporated herein.

51. The FLSA Collective is defined as:

**ALL NON-EXEMPT NURSES WHO WORKED FOR MONARCH HEALTHCARE MANAGEMENT LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM AUGUST 5, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective" or "FLSA Collective Members").**

52. At all times hereinafter mentioned, Monarch has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

53. At all times hereinafter mentioned, Monarch has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

54. At all times hereinafter mentioned, Monarch has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of a hospital and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

55. Specifically, Monarch operates numerous assisted living facilities, purchases materials through commerce, transports materials through commerce and on the interstate highways, and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

56. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Monarch, these individuals provided services for Monarch that involved interstate commerce for purposes of the FLSA.

57. In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

58. Specifically, Plaintiff and the FLSA Collective Members are (or were) non-exempt nurses who assisted Monarch's customers and employees throughout the United States. 29 U.S.C. § 203(j).

59. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

60. The proposed class of similarly situated employees, i.e. FLSA collective members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 51.

61. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Monarch.

**B.  FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT**

62. Monarch violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce, the operation of a hospital, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

63. Moreover, Monarch knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

64. Monarch knew or should have known its pay practices were in violation of the FLSA.

65. Monarch is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

66. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Monarch to pay them according to the law.

67. The decision and practice by Monarch to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was not reasonable nor in good faith.

68. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C. **COLLECTIVE ACTION ALLEGATIONS**

69. All previous paragraphs are incorporated as though fully set forth herein.

70. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of Monarch's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

71. Other similarly situated employees of Monarch have been victimized by Monarch's patterns, practices, and policies, which are in willful violation of the FLSA.

72. The FLSA Collective Members are defined in Paragraph 51.

73. Monarch's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Monarch's, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

74. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

75. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

76. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

77. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

78. Absent a collective action, many members of the proposed FLSA collective will not likely obtain redress of their injuries and Monarch will retain the proceeds of their violations.

79. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

80. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 51 and notice should be promptly sent.

## COUNT TWO
### (Class Action Alleging Violations of the Minnesota Wage Statutes)

**A.     MINNESOTA COVERAGE**

81. Paragraphs 1-80 are incorporated as though fully set forth herein.

82. The Minnesota Class is defined as:

**ALL NON-EXEMPT NURSES WHO WORKED FOR MONARCH HEALTHCARE MANAGEMENT LLC, ANYWHERE IN THE STATE OF MINNESOTA, AT ANY TIME FROM AUGUST 5, 2018**

THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Minnesota Class" or "Minnesota Class Members").

83. At all times hereinafter mentioned, Monarch has been an employer within the meaning of the Minnesota Wage Statute. *See* MINN. STAT. ANN. § 177.23; 177.24, and 181.171, subd. 4.

84. At all times hereinafter mentioned, the Plaintiff Quay and the Minnesota Class Members have been employees within the meaning of the Minnesota Wage Statute. *See* MINN. STAT. ANN. § 177.23; 177.24; and 181.171, subd. 4.

**B.   FAILURE TO PAY WAGES IN ACCORDANCE WITH THE MINNESOTA WAGE STATUTES**

85. All previous paragraphs are incorporated as though fully set forth herein.

86. The Minnesota Wage Statutes require employers to pay non-exempt employees 1.5 times the regular rate of pay for all hours worked over 48 in a workweek. *See* MINN. STAT. ANN. § 177.25.

87. Monarch suffered and permitted Plaintiff and the proposed Minnesota Class to work more than 48 hours in a workweek without proper overtime compensation as required by the Minnesota Wage Statutes.

88. Monarch knew or showed reckless disregard for the fact that it failed to pay these individuals overtime compensation, constituting a willful violation of the Minnesota Wage Statutes.

89. Monarch's failure to comply with the Minnesota Wage Statutes overtime protections caused Plaintiff and the proposed Minnesota Class to suffer loss of wages and interest thereon.

90. The Minnesota Wage Statutes also require employers to pay their employees all wages due at least once each calendar month. *See* MINN. STAT. ANN. § 181.101(a).

91. According to the, "[w]ages are actually earned and unpaid if the employee was not paid for all time worked at the employee's regular rate of pay . . ." MINN. STAT. ANN. § 181.113(a); 181.114.

92. Because Monarch willfully failed to timely pay the Plaintiff Quay and the Minnesota Class Members all of their earned wages for time they spent working through their meal breaks Monarch is in violation of the Minnesota Wage Statutes. *See* MINN. STAT. ANN. §§ 181.101; 181.113; 181.114.

93. Monarch further willfully violated the Minnesota Wage Statutes by failing to provide a meal break to Plaintiff Quay and the Minnesota Class Members when they worked for eight or more consecutive hours. *See* MINN. STAT. ANN. § 177.254.

94. Monarch failed to provide bona fide meal breaks under the Minnesota Wage Statutes because Plaintiff Quay and the Minnesota Class Members were not completely relieved of duty for the purposes of eating regular meals but instead remained on duty and were frequently interrupted by calls to duty. *See* MINN. R. § 5200.0120.

95. Plaintiff Quay and Minnesota Class Members have suffered damages and continue to suffer damages as a result of Monarch's acts or omissions as described herein; though Monarch is in possession and control of necessary documents and information from which Plaintiff Quay and the Minnesota Class Members would be able to precisely calculate damages.

96. Plaintiff Quay, on behalf of themselves and the Minnesota Class Members, seek recovery of their unpaid wages. *See* MINN. STAT. ANN. § 181.113(a); 181.114.

97. Plaintiff and the proposed Minnesota Class are entitled to unpaid overtime, unpaid wages, liquidated damages, and attorney's fees and costs under the Minnesota Wage Statutes.

98. The proposed class of employees, i.e. putative class members sought to be certified pursuant to the Minnesota Wage Statute, is defined in Paragraph 82.

99. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Monarch.

### C. MINNESOTA WAGE STATUTES CLASS ALLEGATIONS

100. All previous paragraphs are incorporated as though fully set forth herein.

101. Plaintiff Quay brings her Minnesota Wage Statute claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Monarch who worked in Minnesota at any time since August 5, 2018.

102. Class action treatment of Plaintiff Quay's Minnesota Wage Statutes claim is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

103. The number of Minnesota Class Members is so numerous that joinder of all class members is impracticable.

104. Plaintiff Quay is a member of the Minnesota Class, her claims are typical of the claims of other Minnesota Class Members, and she has no interests that are antagonistic to or in conflict with the interests of other Minnesota Class Members.

105. Plaintiff Quay and her counsel will fairly and adequately represent the Minnesota Class Members and their interests.

106. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only

individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

107. Accordingly, the Minnesota Class should be certified as defined in Paragraph 82.

## VI.
## RELIEF SOUGHT

108. Plaintiff Quay respectfully prays for judgment against Monarch as follows:

    a. For an Order certifying the FLSA Collective as defined in Paragraph 51 and requiring Monarch to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

    b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order pursuant to Section 16(b) of the FLSA finding Monarch liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

    d. For an Order certifying the Minnesota Class as defined in Paragraph 82 and designating Plaintiff Quay as the Class Representative of the Minnesota Class.

    e. For an Order pursuant to the Minnesota Wage Statutes awarding the Minnesota Class Members attorneys fees, liquidated damages, and all other damages allowed by law;

    f. For an Order awarding the costs of this action;

    g. For an Order awarding attorneys' fees;

  h. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

  i. For an Order awarding Plaintiff Quay a service award as permitted by law;

  j. For an Order compelling the accounting of the books and records of Monarch, at Monarch's expense; and

  k. For an Order granting such other and further relief as may be necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, those similarly situated, and members of the proposed Minnesota Class demand a trial by jury.

Date: August 5, 2021  Respectfully submitted,

  **NICHOLS KASTER, PLLP**

  *s/Michele R. Fisher*
  Michele R. Fisher, MN Bar No. 303069
  4700 IDS Center, 80 South 8th Street
  Minneapolis, MN  55402
  Telephone (612) 256-3200
  Fax (612) 215-6870
  fisher@nka.com

  ***Local Counsel***

  By: */s/ Clif Alexander*
  **Clif Alexander** (application *pro hac vice* forthcoming*)*
  Texas Bar No. 24064805
  clif@a2xlaw.com

**Austin W. Anderson** (application *pro hac vice* forthcoming)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiff and Putative Class Members***