## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## MINNEAPOLIS DIVISION

| | | |
|---|---|---|
| APRIL QUAY, | § | |
| individually and on behalf | § | Civil No. 0:21-CV-01796-JRT-TNL |
| of all others similarly situated | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| MONARCH HEALTHCARE | § | |
| MANAGEMENT LLC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO THE PUTATIVE CLASS MEMBERS

## I.
## INTRODUCTION

Plaintiff April Quay, the Opt-In Plaintiffs, and the Putative Class Members ("Plaintiff and the Putative Class Members") are non-exempt Nurses[1] who were subject to an automatic minute meal break deduction while working for Monarch Healthcare Management, LLC ("Defendant" or "Monarch") anywhere in the United States, at any time in the last three years through the final disposition of this matter. Plaintiff contends that Monarch failed to pay overtime compensation at the required rate of time-and-one-half their regular rate of pay for all hours worked over forty (40) hours in a workweek. Specifically, Plaintiff contends that Monarch's corporate-wide payroll practice where it automatically deducted (and continues to

---

[1] The term "Nurses" is defined as all hourly employees whose primary job was (and is) to provide direct care to patients.

deduct) thirty (30) minutes of pay from Plaintiff and the Putative Class Members' wages every workday for a meal break that Plaintiff and the Putative Class Members rarely, if ever, took was (and continues to be) improper under the FLSA. Monarch's automatic meal break deduction applies uniformly and consistently to all of its non-exempt Nurses across the United States.

Plaintiff respectfully requests that this Court conditionally certify the following class under the FLSA:

**ALL NON-EXEMPT NURSES WHO WERE SUBJECT TO AN AUTOMATIC MEAL PERIOD DEDUCTION WHILE WORKING FOR MONARCH HEALTHCARE MANAGEMENT LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM AUGUST 5, 2018 THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

The Putative Class Members are similarly situated in terms of their job titles, duties, and compensation. The Putative Class Members were all denied their proper amount of overtime compensation as a result of Monarch's automatic meal break policy.

As demonstrated in more detail below, Plaintiff has more than met the pre-discovery, lenient standard for conditional certification, and notice should be issued to the Putative Class Members immediately to promote the broad remedial purpose of the FLSA and to prevent the wasting of viable and valuable claims for unpaid wages. "In applying the FLSA, 'we must liberally construe it to apply to the furthest reaches consistent with congressional direction in fulfillment of its humanitarian and remedial purposes.'" *Perez v. Contingent Care, LLC*, 820 F.3d 288, 292 (8th Cir. 2016) (quoting *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2s 843, 846 (8th Cir. 1975)).

Accordingly, Plaintiff respectfully requests that the Court grant this Motion and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that a judicially approved notice be sent to all Putative Class Members by mail, e-mail, and text-message and further that Plaintiff's counsel be allowed to post the approved notice and consent form next to the time clocks at Monarch work sites; (3) approve the form and content of Plaintiff's proposed judicial notice and reminder notice; (4) order Monarch to produce to Plaintiff's counsel the name, last known address, phone number, e-mail address, and dates of employment for each of the Putative Class Members in a useable electronic format; (5) authorize a sixty (60) day notice period for the Putative Class Members to join the case; and (6) toll the statute of limitations from the date this motion is filed until the end of the sixty (60) day opt-in period.

## II.
## STATEMENT OF FACTS

Monarch provides short term rehabilitation and long-term healthcare services to its live-in patients throughout the state of Minnesota and Wisconsin.[2] To provide its services, Monarch employed (and continues to employ) numerous Nurses—Plaintiff and the Putative Class Members—to provide direct care to its many patients. On August 5, 2021, Plaintiff commenced this collective/class action against Monarch, alleging that the company failed to pay its non-exempt Nurses for all hours worked, including the correct amount of overtime compensation. *See* ECF No. 1. Plaintiff Quay asserted the FLSA claims as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b) and her respective state law claim as a

---

[2] https://monarchmn.com/about-monarch/retirement-home-our-story

class action under Federal Rule of Civil Procedure 23.[3] Currently, twenty-one (21) plaintiffs who worked in ten different Monarch locations. *See* ECF Nos. 1–1, 5, 29, 35, 36, 37–41, 42, 44.

Plaintiff and the Putative Class Members were responsible for monitoring and evaluating the medical conditions of patients, administering medicine, providing direct and indirect holistic care for patients, and helping physicians. *See* Declaration ("Decl.") of April Quay, at ¶ 4 (attached as Exhibit 1 to this Motion); Decl. of Kelsey Cash, at ¶ 4 (Ex. 2); Decl. of Kayla Kolb, at ¶ 4 (Ex. 3); Decl. of Joy Shearrow, at ¶ 4 (Ex. 4); Decl. of Miranda Finnegan, at ¶ 4 (Ex. 5); Decl. of Lorraine Hargenrader, at ¶ 4 (Ex. 6); Decl. of Nicole Schnoor, at ¶ 4 (Ex. 7); Decl. of Theresa Larsen, at ¶ 4 (Ex. 8). The Plaintiff and Putative Class Members primary job function—caring for patients—is universally similar regardless of their work location. *See* Identical CNA job posting for Delano, MN; Faribault, MN; Mankato, MN; and Superior, WI ("[Y]ou arrive for each shift and treat each of your patients with respect and kindness") (Ex. 9); Identical RN job posting for Faribault, MN; Minneapolis, MN; Superior, WI ("[Y]ou arrive each day and ensure that the patients are happy, healthy, and safe") (Ex. 10); Identical LPN job posting for Faribault, MN; Mankato, MN; Superior, WI ("[Y]ou arrive each day and ensure that your patients are happy, healthy, and safe") (Ex. 11). To care for their assigned patients, Plaintiff and the Putative Class Members all regularly worked forty (40) or more hours per week. *See* Exs. 1–8, at ¶¶ 5–6.

---

[3] Plaintiff Quay moves only for conditional certification under the FLSA section 216(b), and not Rule 23 class certification, at this time.

As part of its corporate pay practice, Monarch automatically deducted thirty (30) minutes each shift from Plaintiff and the Putative Class Member's on-the-clock time—and corresponding wages—for a meal-period break. *See* Monarch's Answer, ECF No. 10, at ¶ 17 ("Monarch admits the company … would deduct 30 minutes from an employee's timeclock"); Exs. 1–8, at ¶¶ 7–8; Decl. of Angela Mackendanz, at ¶ 4 (Ex. 12). This policy applied (and continues to apply) to all non-exempt Nurses who work for Monarch. *See id.*

Even though Monarch automatically deducts thirty minutes from Plaintiff and the Putative Class Members' daily wages for a meal break, Monarch does not ensure the meal break is received, as it does not provide any patient duty relief during any part of a shift. *See* Exs. 1–8, at ¶ 9; Ex. 12, at ¶ 7. Instead, Plaintiff and the Putative Class Members are simply expected to squeeze a thirty-minute break in between their constant patient duties. *See* Exs. 1–8, at ¶ 9; Ex. 12, at ¶ 7. Because Monarch requires Plaintiff and the Putative Class Members to care for their patients whenever needed and does not provide any patient relief at any time, it is a practical impossibility for Plaintiff and the Putative Class Members to take a full undisturbed thirty-minute meal break during their shift. *See* Exs. 1–8, at ¶ 10; Ex. 3, at ¶ 12 ("When I worked for Monarch we were always terribly short staffed which made it impossible to have much, if any, spare time in between patient duties"); Ex. 5, at ¶ 11 ("I had to cover three floors of residents with only one other RA. It was impossible to have any time in between the constant patient duties"); Ex. 6, at ¶ 11 ("We were regularly understaffed for the number of patients we had to care for so we rarely had any time between patient duties"). Instead, the regular practice for non-exempt Nurses is to skip eating entirely or eat during whatever five-to-ten-minute break they could manage during their shift. *See* Exs. 1–8, at ¶¶ 10, 12.

Although Monarch's **written policy** provides that Plaintiff and the Putative Class Members can be paid for their meal break if they complete a no-meal break report and have it approved by a manager, the **actual practice** is to discourage such reports or make them impossible to file. Ex. 1, at ¶ 14 ("I notified Monarch management that I did not receive a meal break because of the regular patient calls on multiple occasions … [m]y supervisors regularly refused to sign off on my no meal break reports because they claimed they could not prove I did not take a meal break"); Ex. 2, at ¶ 14 ("My supervisors would tell me that they would take care of and file my no meal break reports, however when I would check my pay later, I would always find that they had not filed my reports and that I had not been paid for working through my meal breaks. Whenever I complained, they would tell me they would take care of it but never actually fix my records to ensure I was paid for the time I worked"); Ex. 7, at ¶ 14 ("Jessica [The Director of Nursing] told me that if any employee fills out three or more no-meal break reports they would be written up"); Exs. 3–8, at ¶ 14 ("My supervisors regularly refused to approve no meal break reports"); Exs. 3–6, 8, at ¶ 15 ("Other hourly Nurses do not report not receiving a meal break because their supervisors have told them that if they eat at any point during the day for any amount of time, that is a meal break so they would not be entitled to be paid for it, even if it is less than thirty minutes"); Ex. 12, at ¶¶ 7–8 (Monarch Director of Nursing stating most employees did not know the no-meal break reports existed and even if they did know of them, there were high barriers to complete them which prevented employees from filing them).

Monarch knows that Plaintiff and the Putative Class Members rarely, if ever, take their full uninterrupted 30-minute meal-break, yet it continues to automatically deduct thirty

minutes from their pay each day. The result, **in practice**, of Monarch's auto-deduction policy was (and is) to deny Plaintiff and the Putative Class Members compensation for all overtime hours worked each week. Monarch's policy and practice of making automatic meal period pay deductions described above applied (and continues to apply) to each Plaintiff and Putative Class Member and evinces Monarch's systemic failure to comply with the overtime requirements of Section 207 of the FLSA.

**III.**
**ARGUMENT & AUTHORITIES**

**A.      LEGAL STANDARD FOR CONDITIONAL CERTIFICATION**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). As the Supreme Court has explained, the FLSA's collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs, and decreasing the burden on the courts through "efficient resolution in one proceeding of common issue of law and fact arising from the same . . . . activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Accordingly, district courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify putative class members that they may choose to "opt-in" to the suit. *See id.* Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 170–72.

Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–16 (5th Cir. 1995); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996); *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995). Courts in the Eighth Circuit, including this one, consistently apply a two-step approach to determine whether plaintiffs are "similarly situated" to the potential plaintiffs. *See Wang v. Jessy Corp.*, No. CV 17-5069 (JRT/HB), 2019 WL 3574553, at *2 (D. Minn. Aug. 6, 2019); *Knaak v. Armour-Eckrich Meats, LLC*, 991 F. Supp. 2d 1052, 1058 (D. Minn. 2014); *Meseck v. TAK Comm'ns, Inc.*, No. CIV. 10-965 JRT AJB, 2011 WL 1190579, at *3 (D. Minn. Mar. 28, 2011).

This Court outlined the two-step process as follows:

> First, the court determines whether the class should be conditionally certified for notification and discovery purposes. **At this stage, the plaintiffs need only establish a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan.** In the second stage, which occurs after discovery is completed, the court conducts an inquiry into several factors, including the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.

*Meseck*, 2011 WL 1190579, at *3.

Following the two-step approach, "the plaintiff first moves for class certification at an early stage in the litigation." *See Kumar v. Tech Mahindra (Americas) Inc.*, No. 1:16-CV-00905-JAR, 2017 WL 3168531, at *2 (E.D. Mo. July 26, 2017) (citing *Murphy v. Ajinomoto Windsor, Inc.*, No. 1:15-cv-0120-JAR, 2017 WL 1194455, at *2 (E.D. Mo. Mar. 30, 2017)). At the notice stage a plaintiff need only establish that he or she and the proposed class is "similarly

situated—in other words, that there is a 'colorable basis for [his or her] claim that the putative class members were the victims of a single decision, policy, or plan.'" *Wang* 2019 WL 3574553, at *2 (quoting *Dege v. Hutchinson Tech., Inc.*, Civ. No. 06–3754, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007)). A plaintiff need only make modest factual showing demonstrating that the plaintiff and putative class members were together the victims of a common policy or plan that violated the law. *See Meseck*, 2011 WL 1190579, at *3 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).

Courts typically judge whether a plaintiff has met his or her initial burden based on the complaint and any affidavits submitted. *See Wang*, 2019 WL 3574553, at *2; *Knaak*, 991 F. Supp. 2d, at 1059. Because at the notice stage the court has "minimal evidence" the plaintiff's burden to demonstrate that the plaintiff and the putative class members are similarly situated "is not onerous" and is judged using a "fairly lenient standard." *Wang*, 2019 WL 3574553, at *2. Indeed, at the notice stage "[t]he court does not make any credibility determinations of findings of fact with respect to contrary evidence presented by the parties." *Dege*, 2007 WL 586787, at *2; *Meseck*, 2011 WL 1190579, at *3.

It is at the second stage, or the decertification stage—typically after the close of discovery—that the court reviews the information obtained and makes a factual determination regarding whether the members of the conditionally-certified class are *truly* similarly situated. *See Kumar*, 2017 WL 3168531, at *3. At the later stage the court will employ a stricter standard to determine whether plaintiffs are similarly situated in terms of their disparate factual and employment settings, the various defenses available to the defendant that appear individual to

each plaintiff, and other fairness and procedural considerations. *See Wang*, 2019 WL 3574553, at *2.

## B.   DETERMINING CONDITIONAL CERTIFICATION AT THE "NOTICE" STAGE

At the first stage, the plaintiff "need not show that members of the conditionally certified class are ***actually*** similarly situated[ ]" and "[t]he Court will not make any credibility determinations or findings of fact with respect to contradictory evidence presented by the parties at this initial stage." *Ondes v. Monsanto Co.*, No. 4:11-cv-197-JAR, 2011 WL 6152858, at *3 (E.D. Mo. Dec. 12, 2011); *see also Perrin, v. Papa John's Intern., Inc.*, No. 4:09-cv-1335-AGF, 2011 WL 4089251, at *3 (E.D. Mo. Sept. 14, 2011). All a plaintiff must demonstrate is that there is some factual nexus that connects the plaintiff to the other putative class members as victims of an unlawful practice. *See Meseck*, 2011 WL 1190579, at *3. Because the motion for conditional certification is typically filed at an early stage of the litigation it "requires[ ] a lenient evaluation standard and typically results[ ] in conditional certification of a representative class." *Cox v. Gordmans Stores, Inc.*, No. 4:16-cv-216-RLW, 2016 WL 6962508, at *2 (E.D. Mo. Nov. 28, 2016) (citing *Kautsch v. Premier Communications*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)).

### 1.   Plaintiff and the Putative Class Members are Victims of the Same FLSA-Violating Policy

Plaintiff and the Putative Class Members all suffered from the same FLSA-violating policy, that is Monarch deducts thirty minutes from their wages every shift for a meal break, despite the fact that they are never relieved of duty and frequently work throughout their shift without any breaks. *See* Exs. 1–8, at ¶¶ 7–8, 10–12; ECF No. 10, at 17; *see also See Roby v. Lincoln Elec. Co.*, No. 1:18 CV 0006, 2019 WL 932031, at *2 (N.D. Ohio Feb. 26, 2019) ("A bona-fide meal period is defined as a break during which the employee is 'completely relieved of duty

for the purposes of eating regular meals'"). Monarch makes this deduction despite knowing that the Plaintiff and Putative Class Members worked through their shifts and never took a full undisturbed thirty-minute meal break. *See* Exs. 1–8, at ¶ 13. Indeed, Monarch intentionally prevented and discouraged Plaintiff and the Putative Class Members from claiming this time for pay purposes. *See* Exs. 1–8, at ¶¶ 14–15. This FLSA violating policy is applied broadly to the entire putative class. *See* Exs. 1–8, at ¶ 16.

Monarch may claim that its **written policy** is to pay for all hours worked, but a written policy cannot prevent conditional certification where plaintiffs can demonstrate that the **actual practice** differed from the written policy. *See McClean v. Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2011 WL 6153091, at *6 (W.D. Mo. Dec. 12, 2011) ("Defendants maintenance of a formal policy compensating employees for all hours worked during meal breaks is not sufficient to defeat Plaintiffs FLSA claim if Defendants have a common practice of requiring employees to work during lunch breaks without compensation"). Plaintiff's evidence at this stage satisfies her initial lenient burden and demonstrates that the Plaintiff and Putative Class Members were together victims of the same FLSA violating policy. *See Trogdon v. Kleenco Maint. & Constr., Inc.*, No. 5:14-CV-05057, 2015 WL 11120400, at *1 (W.D. Ark. July 27, 2015) (denying defendant's motion for reconsideration, affirming conditional certification of a class based on four declarations stating plaintiffs were underpaid as a result of defendant's automatic meal break deduction).

### 2. Plaintiff and the Putative Class Members Performed Similar Job Duties

In addition to working under the same overarching corporate pay policy, Monarch's non-exempt Nurses, such as Plaintiff and the Putative Class Members, all performed the same

or similar job duties—that is, they were all required to care for patients. Exs. 1–8, at ¶ 4. This basic fact holds true for other Monarch facilities. *See generally* Exs. 9–11. Plaintiff and the Putative Class Members were also all non-exempt hourly employees, subject to the same policies and procedures. Exs. 1–8, at ¶¶ 3, 8–9. Plaintiff and the Putative Class Members were all paid similarly, were governed by the same work policies, all performed similar work functions, and all suffered from the same FLSA violating policy. They are similarly situated for purposes of conditional certification at the notice stage.

Monarch may try to distract the Court with differing job titles and slight variations in job duties, or rates to theorize that Plaintiff and the Putative Class Members are not similarly situated. However, as discussed above, Plaintiff need not be *identical* to the Putative Class Members, she must merely show that she is "similarly situated" to the Putative Class Members in relevant respects given the claims at issue. *See Kumar*, 2017 WL 3168531, at *3. Monarch cannot overcome the fact that Plaintiff and the Putative Class are similarly situated and were all subjected to the same pay policy, which itself created the common injury to all putative class members.

### 3. This Case Should Be Conditionally Certified

Plaintiff alleges that the meal break deduction used by Monarch caused the violation of the FLSA and that all non-exempt Nurses subject to it have suffered a common injury. Plaintiff presented evidence that the actual policy Monarch uses is to deduct thirty minutes of pay from the Plaintiff and Putative Class Members' wages, despite knowing that they regularly work through their shift and do not receive a meal break. Plaintiff has met her burden at this stage and this case should be conditionally certified. *See McClean*, 2011 WL 6153091, at *6

(conditionally certifying class of all hourly employees alleged to have been underpaid due to an automatic meal deduction); *Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852, 860 (N.D. Ill. 2013) (granting conditional certification to "nurses and hospital employees who are engaged in the direct care of patients" and noting that "[t]he nature of their interrupted meal breaks was affected by the demands of patient care"); *Chin v Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014) (conditionally certifying a nationwide class of employees where plaintiff had shown Putative Class Members were similarly situated because of uniformity in their job duties and because defendant's common pay policy inflicts a common injury on the putative class); *Bowman v. Doe Run Res. Corp.*, No. 4:13-cv-2519-CDP, 2014 WL 3579885, at *4 (E.D. Mo. July 21, 2014) (concluding plaintiffs had come forward with substantial allegations that they were victims of a single decision, policy or plan where they alleged they were required to perform some work, including donning and doffing and relieving co-workers, without getting paid for it); *Jost v. Commonwealth Land title Ins. Co.*, No. 4:08-cv-00734CDP, 2009 WL 211943, at *4 (E.D. Mo. Jan. 27, 2009) (granting certification based on the minimal evidence of the three named plaintiffs' affidavits); *Schleipfer v. Mitek Corp.*, 1:06-cv-109-CDP, 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007) (concluding plaintiffs had "cleared the relatively low hurdle of demonstrating that conditional certification is appropriate" where plaintiff alleged that the work he performed was "generally comparable" to those he sought to represent ). Plaintiff's evidence, by way of the declarations and pleadings on file, is more than sufficient to support a finding that Plaintiff and the Putative Class Members are similarly situated. *Dernovish v. AT&T Operations, Inc.*, No. 09–0015–CV–W–ODS, 2010 WL 143692, at *2–3 (W.D. Mo. Jan. 12, 2010) (certifying nation-wide class of over 1,000 call center employees with dozens of

job titles based upon declarations of fourteen employees holding only two of the job titles from three of the ten facilities); *Robertson v. LTS Management Services LLC*, 642 F. Supp. 2d 922, 924 (noting conditional certification may be granted on basis of a single plaintiff's affidavit).

## IV.
## COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE

The Court should authorize notice to be sent to all individuals who were employed by Monarch Healthcare Management LLC as non-exempt Nurses who were subjected to the automatic meal period deduction in the last three years through the final disposition of this case. A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Sperling*, 493 U.S. at 170. Court-authorized notice prevents "misleading communications" and assures the dissemination of accurate information. *Id.* at 172.

Prompt court action is needed because the claims of the putative class members are being extinguished or diminished due to the running of the statute of limitations on their claims. Unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *See Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998). It continues to run on each individual's claim until he or she files a consent form. *See* 29 U.S.C. § 256(b). The consequence of this fundamental difference is self-evident—every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover. *See Privette v. Waste Pro of N. Carolina, Inc.*, No. 2:19-CV-3221-DCN, 2020 WL 1892167, at *9 (D.S.C. Apr. 16, 2020) (noting the great

important of deciding conditional certification quickly because "the claims of potential plaintiffs, die daily").

## A.  PLAINTIFF'S PROPOSED NOTICE IS TIMELY, ACCURATE, AND INFORMATIVE

Judicially authorized notice of a collective action under § 216(b) must be "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Plaintiff's proposed notice will provide employees with an accurate description of this lawsuit, as well as their rights under the Fair Labor Standards Act. The proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of this collective action and should be adopted. Plaintiff requests that the Court approve the proposed Notice and Consent form attached as Exhibit 13. In a neutral manner, the Notice informs the Putative Class Members of their rights to opt-in to this litigation, advises that this Court has yet to decide the merits of the dispute, and further advises that Monarch cannot retaliate against them for asserting their rights under the FLSA.

## B.  PLAINTIFF'S PROPOSED NOTICE AND CONSENT FORMS SHOULD BE ISSUED VIA FIRST CLASS MAIL, E-MAIL, TEXT-MESSAGE, AND POSTING AT MONARCH'S FACILITIES

Plaintiff requests that the Court authorize notice in the form of: (1) mailing of the notice by Plaintiff's counsel to all Putative Class Members; (2) emailing of the notice by Plaintiff's counsel to all Putative Class Members to their last known personal email address; (3) text-message of the notice by Plaintiff's counsel to all Putative Class Members; and (4) posting of the notice by Monarch near each clock in device at facilities where Putative Class Members are employed. Issuance of notice through these methods will ensure that all Putative Class Members are reached as soon as possible. *See White v. 14051 Manchester, Inc.*, No. 4:12-

cv-469-JAR, 2012 WL 5994263, at *8 (E.D. Mo. Nov. 30, 2012) ("Here, the Court finds fair and proper notice to putative plaintiffs will be accomplished by regular mail, electronic mail, and posting in Defendants' break rooms . . . ."); *Rhodes v. Truman Med. Ctr.*, No. 4:13-cv-990-NKL, 2014 WL 4722285, at *5 (W.D. Mo. Sept. 23, 2014) ("[E]mail provides an efficient and cost-effective means of disseminating notice documents and has been endorsed by courts in the past."); *Esry v. OTB Acquisition LLC*, No. 4:18-cv-155-DPM, 2018 WL 4959635, at *1 (E.D. Ark. Aug. 10, 2018) (approving issuance of notice via mail, e-mail, and text message); *Smart v. City of Hughes, Arkansas*, No. 2:19-CV-00047-KGB, 2021 WL 500713, at *5 (E.D. Ark. Feb. 10, 2021) (stating that sending notice via multiple methods is "common practice"); *Putnam v. Galaxy 1 Mktg.*, 276 F.R.D. 264, 277–78 (S.D. Iowa 2011) (noting that "courts routinely approve requests to post notice in common areas or on employee bulletin boards, even if there is an alternative form of notice"). Indeed, it is in the best interest of justice that notice be issued in a way sure to reach the largest amount of potential plaintiffs. *Kautsch*, 504 F. Supp at 690 (holding that "justice is most readily served by notice reaching the largest number of potential plaintiffs [at the initial certification stage of an FLSA proceeding]").

Plaintiff requests that she be allowed to send the Court authorized notice via text-message as well. Plaintiff proposes sending a simple text message with a link to the full Court-authorized Notice form. In today's modern society, cell phones are an integral part of everyday life and sending notice via text message will ensure the largest number of putative class members are apprised of their rights. *Scarpino v. Imagination Indus., Inc.*, No. 8:20CV449, 2021 WL 1269095, at *10 (D. Neb. Mar. 19, 2021), *report and recommendation adopted*, No. 8:20CV449, 2021 WL 1267270 (D. Neb. Apr. 6, 2021) (granting notice via mail, email, text-message, and

posting at the workplace). "This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication." *Nazih v. Café Istanbul of Columbus, LLC*, No. 2:17-CV-947, 2018 WL 4334613, at *6 (S.D. Ohio Sept. 11, 2018) (quoting *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 238972, at *8 (S.D. Ohio May. 25, 2018). Indeed, text-message notice, is the best method to ensure the accurate court approved notice is received by all Putative Class Members, as it effectively bypasses modern society's issues with mailing and email (spam). *See* Exs. 1–8, at ¶ 19.

A phone number rarely changes, whereas Putative Class Members regularly move from mailing address to mailing address. *See* Exs. 1–8, at ¶ 18. Further, given the vast rise of spam emails and spam blockers (which can at times block the Court-approved Notice), there is no guarantee that all Putative Class Members will see the Court-authorized Notice email under the avalanche of spam emails we face in today's society. *See Waller v. AFNI, Inc.*, No. 20-CV-1080-JES-JEH, 2020 WL 6694298, at *5 (C.D. Ill. Nov. 13, 2020) ("Further, there is less of a risk that potential class members would find this text message notice to be spam because it relates to a company that an individual has worked for in the past three years or so, or may continue to be working"). Notice via email used to be rare, and now is commonplace, the same is beginning to happen with text-notice as Courts recognize its far greater ability to reach a Putative Class Member and inform them of their rights. *See Dennis v. Greatland Home Health Servs., Inc.,* No. 19 C 5427, 2020 WL 606784, at *4 (N.D. Ill. Feb. 7, 2020) (ordering notice be sent via U.S. mail, email, and text-message); *Owens v. GLH Capital Enter., Inc.*, No. 3:16-CV-1109-NJR-SCW, 2017 WL 2985600, at *5 (S.D. Ill. July 13, 2017) (same); *Alaniz v. Gordon Reed*

*& Assoc.*, No. 6:18-CV-1595, 2020 WL 1137628, at *7 (W.D. La. Mar. 9, 2020) (same); *Wingo v. Martin Transp., Inc.*, 2018 WL 6334312, at *10 (E.D. Tex. Dec. 5, 2018) (same); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 436 (D.N.M. 2018) ("the Court continues to find that notice by email and text is reasonable in today's mobile society and these methods of communication may offer a more reliable means of reaching an individual even if that individual is away from home or has moved"); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220PAERWL, 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (noting notice via text is ordinarily granted, especially when the nature of the business entails a high turnover rate); *Hansen v. Waste Pro of S.C., Inc.*, No. 2:17-CV-02654-DCN, 2020 WL 1892243, at *7 (D.S.C. Apr. 16, 2020) (citing cases granting notice via text); *Greene v. Omni Limousine, Inc.*, No. 218CV01760GMNVCF, 2019 WL 2503950, at *6 (D. Nev. June 15, 2019) (granting notice via US mail, email, and text-message).

Plaintiff's counsel will oversee the dissemination of such Court-approved notices and pay the up-front charges. Plaintiff's counsel also requests that it be permitted to employ a third-party claims administration company to assist in the notice process if counsel deems it necessary and appropriate. Plaintiff further requests that putative class members have the option to execute their consent forms online through an electronic signature service. This service allows putative class members to sign their consent forms electronically by clicking on a link in an encrypted e-mail designated only for that user, which in turn allows the user to review the document, indicate the user read and understood the consent form, and type additional information. Users are instantaneously provided with a PDF copy of the form, and a copy is accessible to Plaintiff's counsel who will, in turn, file the same with the Court.

Importantly, this would merely be an additional method for signing the same court approved consent form.

## C.    REMINDER NOTICES WILL FURTHER THE REMEDIAL PURPOSE OF THE FLSA

Plaintiff further requests that the notice period be set for sixty (60) days, and that the Court authorize Plaintiff's counsel to send an identical reminder notice to Putative Class Members thirty (30) days before the expiration of the opt-in deadline. *See Ortiz–Alvarado v. Gomez*, No. 14–CV–209 (MJD/SER), 2014 WL 3952434, at *6 (D. Minn. Aug. 14, 2014) (finding a reminder notice was a reasonable way to ensure that potential class members received notice); *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1198 (D. Minn. 2015) (approving notice be sent by email, mail, posting in employers' stores, and that a reminder letter be sent on the 30th day of the 60-day notice period); *Harger v. Fairway Mgmt., Inc.*, No. 2:15-CV-04232-NKL, 2016 WL 3200282, at *4 (W.D. Mo. June 8, 2016) (finding a reminder notice appropriate); *Albelo v. Epic Landscape Prods., L.C.*, No. 17-00454-CV-W-ODS, 2018 WL 3215738, at *4 (W.D. Mo. May 23, 2018); *Jennings v. Cellco P'ship*, Civ. No. 12-00293, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012).

## D.    COURTS ROUTINELY REQUIRE THE PRODUCTION OF PERSONAL CONTACT INFORMATION FOR THE NOTICE PROCESS

The Court should also order Monarch to provide Plaintiff's counsel a list of all Putative Class Members and their contact information, both of which are necessary to disseminate Court-authorized notice and are routinely disclosed in FLSA collective actions. *See Hoffmann-La Roche*, 493 U.S. at 170 (affirming that the district court correctly permitted discovery of the names and addresses of the putative class). Accordingly, Plaintiff respectfully requests that within ten (10) days of the Court's Order, Monarch be required to provide Plaintiff's counsel

a list, in computer readable format (such as Excel), of all individuals who were employed by Monarch Healthcare Management LLC as non-exempt Nurses who were subject to the automatic meal period deduction at any time in the last three years through the final disposition of this matter. This list should include each Putative Class Members' (1) full name, (2) job title, (3) last known address, (4) last known personal email address, (5) telephone number; (6) dates of employment, (7) location of employment, and (8) employee identification number. This information will ensure notice is adequately distributed. See *White*, 2012 WL 5994263, at *6 (requiring defendants to provide a list of all putative class members' names, addresses, email addresses, and dates of employment and locations in a readable electronic format); *Cox*, 2016 WL 6962508, at *5 (same). Plaintiff also proposes that Monarch provide Plaintiff's counsel the last four digits of the social security number of any putative class member for whom the mailed notice is returned as undeliverable by the United States Postal Service. The last four digits are needed to obtain current contact information for the putative class members and are routinely produced by an employer for purposes of the notice process. *See Burch*, 500 F. Supp. 2d at 1191; *Cooper v. Integrity Home Care, Inc.*, No. 4:16-cv-1293-DGK, 2017 WL 1628974, at *8 (W.D. Mo. May 1, 2017).

Plaintiff also requests that this Court toll the statute of limitations from the date of the filing of this motion for conditional certification until the end of the Notice period. *Holliday v. JS Express Inc.*, No. 4:12-cv-01732-ERW, 2013 WL 2395333, at *8 (E.D. Mo. May 30, 2013) (tolling the statute of limitations for the period from the date of the filing of the motion for conditional certification through the commencement of the notice period); *Davenport v. Charter Commc'ns, LLC*, No. 4:12-cv-0007-AGF, 2014 WL 2993739, at *7 (E.D. Mo. July 3, 2014)

(concluding that "[though] some employees learned of and joined the suit before notice of conditional certification does not mean that other putative plaintiffs should be charged with knowledge of the suit and the obligation to affirmatively opt-in before notice"). It is in the best interest of justice that the statute of limitations be tolled for the unaware putative class members while the Court considers this Motion, and if granted, that it be tolled during the time notice is distributed to putative class members. *See Clendenen v. Steak N Shake Operations, Inc.*, No. 4:17-cv-01506-JAR, 2018 WL 4679728, at *4 (E.D. Mo. Sept. 28, 2018) (recognizing that the granting of equitable tolling of the "statute of limitations for potential opt-in plaintiffs is not uncommon in this Circuit especially as to the period of time during which the motion to conditionally certify is pending"); *Getchman v. Pyramid Consulting, Inc.*, No. 4:16-cv-1208 CDP, 2017 WL 713034, at *6 (E.D. Mo. Feb. 23, 2017).

## V.
## CONCLUSION

Plaintiff has affirmatively demonstrated that the Putative Class Members are similarly situated and Court-approved Notice should be sent to all individuals who were employed by Monarch Healthcare Management LLC as non-exempt Nurses, who were subject to the automatic meal period deduction, at any time in the past three years through the final disposition of this case. To facilitate the purpose of the collective action provisions, Plaintiff respectfully requests that the Court grant this Motion.

Date:   September 15, 2022

Respectfully submitted,

**NICHOLS KASTER, PLLP**

*s/Michele R. Fisher*
Michele R. Fisher, MN Bar No. 303069
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 215-6870
fisher@nka.com

*Local Counsel*

By:     /s/ *Clif Alexander*
**Clif Alexander** (admitted *pro hac vice*)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (admitted *pro hac vice*)
Texas Bar No. 24045189
austin@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys in Charge for Plaintiff and Putative Class Members*