**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| APRIL QUAY, *individually and on behalf of all other similarly situated*, | |
| | Case No. 21-1796 (JRT/TNL) |
| Plaintiff, | |
| | **ORDER GRANTING PLAINTIFF'S MOTION** |
| v. | **FOR CONDITIONAL CLASS CERTIFICATION** |
| MONARCH HEALTHCARE MANAGEMENT LLC, | |
| Defendant. | |

Austin Winters Anderson, Carter Tilden Hastings, and William Clifton Alexander, **ANDERSON ALEXANDER, PLLC**, 819 North Upper Broadway Street, Corpus Christi, TX 78401; Michele R. Fisher, **NICHOLS KASTER PLLP**, 80 South Eighth Street, 4700 IDS Center, Minneapolis, MN 55402, for plaintiff.

Bradley J. Lindeman and Melissa Dosick Riethof, **MEAGHER & GEER, P.L.L.P.**, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for defendant.

Plaintiff April Quay brought this action against her former employer Monarch Healthcare Management LLC ("Monarch"), alleging a failure to reimburse her for unused, unpaid meal breaks in violation of the Fair Labor Standards Act ("FLSA"), the Minnesota Fair Labor Standards Act ("MFLSA"), the Minnesota Payment of Wages Act ("MPWA"), and the Minnesota Code of Regulations on Wages and Labor, ("MCRW") (collectively the "Minnesota Wage Statutes").  Quay worked as a certified nursing assistant and trained medical aide for Monarch and while employed, was subject to Monarch's former policy

of automatic pay reduction for scheduled meal breaks. Quay seeks recovery for the times when those breaks did not occur, individually and on behalf of all current and former nurses who worked for Monarch during the relevant time period. She seeks to conditionally certify the case as a collective action and provide court-supervised notice to putative class members, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Quay also asks for equitable tolling of the statute of limitations.

As Quay has met the burden of showing that she and potential class members are sufficiently similarly situated, the Court will grant the motion to conditionally certify the class. Further, the Court will grant the motion for judicially approved notice with certain alterations as outlined below. Finally, the Court will grant Quay's motion for equitable tolling of the statute of limitations given extraordinary circumstances.

## BACKGROUND

### I.   FACTS

Monarch provides short-term rehabilitation and long-term healthcare services to its live-in patients throughout Minnesota. (Compl. ¶ 22, Aug. 5, 2021, Docket No. 1; Def.'s Answer ¶ 14, Aug. 25, 2021, Docket No. 10.) To provide its services, Monarch employed numerous nurses, including Quay and the opt-in Plaintiffs (collectively "Plaintiffs") and putative class members, to provide direct care to its patients for the relevant time period. (Compl. ¶¶ 23, 24.) This direct care included monitoring and evaluating the medical conditions of patients, administering medicine, providing direct and indirect holistic care

for patients, and helping physicians.  (Pl.'s Mem. Supp. Mot. Conditional Certification, Ex. 2 ("Cash Decl."), ¶ 4, Sept. 15, 2022, Docket No. 51-2.)  The putative class members are non-exempt nurses who were paid hourly, worked approximately 20 to 40 "on-the-clock" hours per week and up to four uncompensated "off-the-clock" hours per week, and have similar job duties, pay structure, and are subject to Monarch's policies that resulted in the alleged FLSA and Minnesota Wage Statutes violations.  (Compl. ¶¶ 25–30.)

Specifically, Quay alleges that Monarch has a policy where it automatically deducts one or two 30-minute meal periods from Plaintiffs' daily time, depending on the length of the employees' shifts.  (*Id.* ¶¶ 31–32.)  Monarch does not completely relieve Plaintiffs from duty to take a meal; instead, they are required to perform duties, whether active or inactive, during all hours of their shift and frequently are unable to receive sufficient time to eat a meal.  (*Id.* ¶ 33.)  While Monarch allows application for a meal period correction when they are completely unable to take any amount of time off during their day for a meal break, Quay alleges "these requests are frequently denied by supervisors."  (*Id.* ¶ 34.)  Monarch supervisors allegedly regularly deny these requests because they claim that the requester cannot prove they did not take a break.  (*Id.* ¶ 35.)  Monarch was aware that Plaintiffs and the putative class regularly worked through their meal periods without pay.  (*Id.* ¶ 36.)

Quay claims that although Monarch's **written policy** provides that non-exempt nurses can be paid for their meal break if they complete a no-meal break report and have

it approved by a manager, the **actual practice** is to discourage such reports or make them impossible to file.  (Pl.'s Mem. Supp. Mot. Cert. at 6–7, Sept. 15, 2022, Docket No. 51.) Thus, Monarch's systematic deduction of 30-minute to one hour meal periods from actual hours worked allegedly deprived them of the required amount of regular time pay and overtime pay in violation of the FLSA and Minnesota Wage Statutes.  (Compl. ¶ 40.)

## II.   PROCEDURAL HISTORY

Quay commenced this action against Monarch on August 5, 2021. (*See generally* Compl.)  In this collective action, Quay alleges that Monarch failed to pay its non-exempt nurses for all hours worked, including the correct amount of overtime compensation, in violation of (1) the FLSA, (2) the MNFLSA; (3) the MPWA; and (4) the MCRW.  (*Id.*)  Quay asserts the FLSA claim as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and the respective state law claims as a class action under Federal Rule of Civil Procedure 23.  (Pl.'s Mem. Supp. Mot. Cert. at 3–4.)

Monarch answered the Complaint (*See generally* Def.'s Answer.)  and Quay filed her first motion to certify the class on October 19, 2021.  (Pl.'s 1st Mot. Cert., Oct. 19, 2021, Docket No. 15.)  On January 11, 2022, the Court stayed the case until March 31, 2022, so that the parties could negotiate a resolution of the case.  (1st Order Staying Case, Jan. 11, 2022, Docket No. 28.)  The initial negotiations were unsuccessful, so the Court again granted the parties' request to stay the case and toll the statute of limitations to

continue discussions until August 1, 2022. (2nd Order Staying Case, May 11, 2022, Docket

No. 34.)

Between August 2021 and August 2022, 20 additional current and former Monarch

employees opted into this action (referred *infra* as "Plaintiffs"). (*See, e.g.*, Notice of Filing

Consents to Join, Aug. 11, 2021, Docket No. 5.) Following withdrawal of the initial motion

for certification to account for the additional opt-in Plaintiffs, Quay filed a new motion to

conditionally certify the FLSA collective. (Pl.'s 2nd Mot. Cert., Sept. 15, 2022, Docket No.

49.)

In this motion, Quay moves to conditionally certify the following FLSA collective:

> **ALL NON-EXEMPT NURSES WHO WERE SUBJECT TO AN
> AUTOMATIC MEAL PERIOD DEDUCTION WHILE WORKING
> FOR MONARCH HEALTHCARE MANAGEMENT LLC,
> ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM
> AUGUST 5, 2018 THROUGH THE FINAL DISPOSITION OF THIS
> MATTER.**

(Pl.'s Mem. Supp. Mot. Cert. at 2.) Quay does not move for conditional certification for

any state law claims under Rule 23 at this time. (*Id.* at 4.) Thus, the Court only considers

whether conditional certification of the FLSA collective is proper. Monarch opposes the

motion. (*See generally* Def.'s Mem. Opp. Mot. Cert., Oct. 6, 2022, Docket No. 54.)

**DISCUSSION**

**I.    STANDARD OF REVIEW**

The FLSA permits an employee alleging wage and hour violations to assert claims on behalf of themselves and other employees similarly situated through a collective action. 29 U.S.C. § 216(b); 29 U.S.C. § 256; *see Carts v. Wings Over Happy Valley MDF, LLC*, No. 17-00915, 2023 WL 373175, at *3 (M.D. Pa. Jan. 24, 2023) (explaining that a FLSA collective action commences at different times for each plaintiff depending on when they formally opt into the action). The FLSA collective action process allows individuals to "opt-in" to a lawsuit started by someone else, but, unlike class actions, the outcome is not binding on those who do not opt-in. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 887 (N.D. Iowa 2008). The purpose of the FLSA collective action is to provide plaintiffs with "the advantage of lower individual costs to vindicate rights [through] the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

To proceed with a collective action, plaintiffs must demonstrate that they are similarly situated to the proposed FLSA class in a two-step inquiry. *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014). First, the court determines whether the class should be conditionally certified for notification and discovery purposes. *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007). At the notice stage, determination of class status "is granted liberally because the court has minimal evidence

for analyzing the class." *Chin*, 57 F. Supp. 3d at 1082 (internal citation omitted).  Plaintiffs "need only establish at that time a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." *Id.* (citing *Burch*, 500 F. Supp. 2d at 1186).

If there is contrary evidence presented by the parties, the Court does not make credibility determinations or find facts at this stage.  *Id.* at 1083 (citing *Brennan v. Qwest Commc'ns Intern., Inc.*, No. 07-2024, 2008 WL 819773, at *3 (D. Minn. Mar. 25, 2008). "[C]ourts usually rely on the pleadings and any affidavits submitted by the plaintiff to determine whether to grant conditional certification." *Id.* at 1082–83 (citing *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)).  "'Because the court has minimal evidence, this [notice] determination is made using a fairly lenient standard,'" and "[p]laintiff's burden at this stage is not onerous." *Loomis v. CUSA LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1203, 1218 (D. Minn. 2009).  That said, assertions must be based on personal knowledge to show that employees are similarly situated.  *See Simmons v. Valspar Corp.*, No. 10-3026, 2011 WL 1363988, at *3 (D. Minn. 2011).

In addition to showing class members are similarly situated, "this Court has consistently held that a plaintiff must demonstrate some interest from others who are similarly situated." *Chin*, 57 F. Supp. 3d at 1090. "'[I]n order for a case to be appropriate for collective-action status under the FLSA, the Court must be satisfied that there are

other employees who desire to opt in.'" *Id.* (quoting *Lyons v. Ameriprise Fin., Inc.*, No. 10-503, 2010 WL 3733565, at *4 (D. Minn. Sept. 20, 2010)).  An FLSA plaintiff "is not entitled to conditional certification simply to seek out others who might wish to join the action." *Parker*, 492 F. Supp. 2d at 1166.  Still, a "plaintiff's burden to demonstrate interest is not particularly onerous." *Chin*, 57 F. Supp. 3d at 1091.

Providing notice to potential plaintiffs of the collective action is a vital part of the FLSA collective action process.  *See Hoffmann-La Roche Inc.*, 493 U.S. at 170–71.  "Courts have discretion, in appropriate cases, to facilitate the opt-in process by conditionally certifying a class and authorizing court-supervised notice to potential opt-in plaintiffs." *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014) (internal quotations omitted).  Courts are encouraged to "monitor[] preparation and distribution of the notice" to "ensure that it is timely, accurate, and informative." *Hoffmann-La Roche Inc.*, 493 U.S. at 172.

After discovery, the second stage of inquiry involves considering "'the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.'" *Burch*, 500 F. Supp. 2d at 1186 (quoting *Dege v. Hutchinson Technology, Inc.*, No. 06-3754, 2007 WL 586787, at *2 (D. Minn. Feb. 22, 2007).  "At this later stage, the court uses a stricter standard for determining whether the plaintiffs are similarly situated and reconsiders whether the trial

should proceed collectively or if it should be severed." *Kalish v. High Tech Inst., Inc.*, No

04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005).

## II.   ANALYSIS

The dispute between the parties centers on whether the putative class members

were subjected to a centralized companywide policy to ignore or discourage timecard

change reimbursement requests that satisfies the similarly situated inquiry.  Of note, as

of February 14, 2022, Monarch's timekeeping system ceased making an automatic

deduction for meal breaks, and employees are now paid according to when they punch

in and out of a time clock.  (Def.'s Mem. Opp. Mot. Cert. at 1–2, 5–6, Oct. 6, 2022, Docket

No. 54.)  It is therefore alleged that Monarch's prior company policy reduced the number

of hours worked to account for meal breaks.

But while this policy was the default, Monarch recognized that meal breaks were

not always taken, and were in fact missed with some frequency given the requirements

of the job.   That meal breaks were not guaranteed does not make the time deduction

policy a per se violation of the FLSA. *See Saleen v. Waste Mgmt. Inc.*, 649 F. Supp. 2d 937,

940–41 (D. Minn. 2009) ("[T]he mere fact that some employees of a large corporation

were not properly compensated under the FLSA does not provide a 'colorable basis' to

infer the existence of an unlawful companywide policy.").   Monarch had a policy to

remedy these reductions when employees were unable to take their meal breaks.  Thus,

the similarly situated inquiry hinges on whether Plaintiffs have shown that Monarch had a companywide policy discouraging or refusing time corrections.

Plaintiffs assert that they are similarly situated because all were or are nurses at Monarch, were paid as non-exempt subject to overtime, had the same job duties, and were all subjected to the same practice of automatic meal deductions despite not actually receiving those breaks. Plaintiffs provide declarations from nine individuals at five facilities alleging violations of overtime pay, and there are an additional eleven opt-in plaintiffs listed from five additional facilities. This represents approximately 0.30% of potential class members across all of Monarch's facilities, and potential members from ten of 45 facilities.

Indeed, the relatively low number of declarations and class members makes this evaluation difficult. However, the Eighth Circuit has never set a threshold percentage and districts within the circuit have conditionally certified classes well below 1%. *See Chin*, 57 F. Supp. 3d at 1091. The requirements instead are that the Plaintiffs present a "colorable basis" that they were subject to this companywide policy. *Dege*, 2007 WL 586787, at *1. Plaintiffs provided nine declarations that addressed situations at five different facilities, including statements that indicate supervisors ignored their requests. These declarations show more than "mere averments" of a violation. *See Lyons*, 2010 WL 3733565, at *3 (finding that the plaintiff did not conclusory allege that putative class members were

similarly situated because she submitted declarations, deposition excerpts, and interrogatory responses in support of her assertions).

While Monarch represents that it has 45 facilities and the declarants themselves represent only five facilities, the totality of the opt-in Plaintiffs (21 including Quay) represents ten facilities.  Moreover, Plaintiffs need not show that putative class members **are actually** similarly situated.   Rather, it is enough that Plaintiffs **allege** enough similarities that Monarch seemingly does not dispute; that they had similar job duties, were all non-exempt employees, and were all subject to the same pay practice. *See Chin*, 57 F. Supp. 3d at 1083 (conditionally certifying a nationwide employee class after finding the similarly situated inquiry satisfied when plaintiff submitted employee declarations and exhibits that provided a colorable basis to show uniformity of job duties and a common injury through a common pay policy).  Thus, based on the totality of the evidence presented, the Plaintiffs have met their low burden of showing they are similarly situated.

While Plaintiffs have shown they are similarly situated, they must also show there is potential interest from other similarly situated putative class members.  Since the initiation of this litigation, 20 additional Plaintiffs have joined the action, which shows at least a modest interest in the litigation.  Courts differ as to whether and by what means a plaintiff must demonstrate interest in the proposed collective action. *See, e.g., Chin*, 57 F. Supp. 3d at 1090 (collecting cases).  Nonetheless, this Court has consistently held that a plaintiff must demonstrate **some** interest from others who are similarly situated. *Lyons*,

2010 WL 3733565, at *4 ("in order for a case to be appropriate for collective-action status under the FLSA, the Court must be satisfied that there are other employees who desire to opt in.").

The Court is satisfied that Plaintiffs have satisfied their "not particularly onerous" burden to demonstrate interest. *Chin*, 57 F. Supp. 3d at 1091.  In *Parker,* the plaintiffs proffered their own affidavits, "in which they state[d] that they are 'informed and believe' that . . . other [employees] worked in excess of 40 hours per week and did not receive overtime compensation." *Id.*  492 F. Supp. 2d at 1163.  But the court refused to certify their conditional class because no additional employees had actually opted-into the lawsuit at that time.  492 F. Supp. 2d at 1165–66.  Here, unlike *Parker*, Quay not only proffered her own affidavit, but 20 additional employees have opted into the case.

Because Plaintiffs have met the standard at this stage, the Court will conditionally certify the class as Plaintiffs described, provided that class be for any non-exempt nurses who were employed at any time from August 5, 2018 through February 14, 2022, when Monarch ceased its automatic pay reduction policy.

## III.    STANDARD OF REVIEW FOR JUDICIAL NOTICE

District courts have discretion in appropriate cases to facilitate notice to potential plaintiffs pursuant to 29 U.S.C. § 216(b).  *Hoffmann–La Roche Inc.,* 493 U.S. at 169–70.  As the Supreme Court has explained,

> [b]ecause trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written

consent is required by statute, it lies within the discretion of a
district court to begin its involvement early, at the point of the
initial notice, rather than at some later time . . . . By
monitoring preparation and distribution of the notice, a court
can ensure that it is timely, accurate, and informative.  Both
the parties and the court benefit from settling disputes about
the content of the notice before it is distributed. This
procedure may avoid the need to cancel consents obtained in
an improper manner . . . . Court authorization of notice serves
the legitimate goal of avoiding a multiplicity of duplicative
suits and setting cutoff dates to expedite disposition of the
action.

*Id.* at 171.

Notice is appropriate in this case.  However, the proposed language and the
parties' request require some adaptation.  Because Monarch has since changed the policy
in question, the timeframe will run from August 5, 2018, through February 14, 2022.  The
notice of the conditionally certified class will thus read:

> **ALL NON-EXEMPT NURSES WHO WERE SUBJECT TO AN
> AUTOMATIC MEAL PERIOD DEDUCTION WHILE WORKING
> FOR MONARCH HEALTHCARE MANAGEMENT LLC,
> ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM
> AUGUST 5, 2018 THROUGH FEBRUARY 14, 2022.**

The word "Plaintiffs" in sections one and two of the proposed notice clearly
describe who the term is meant to include and thus there is no need to replace that with
"non-exempt nurses" and "employees," as Monarch requests.  That portion of the
Defendant's request will be denied and the notice language using "Plaintiffs" will be
maintained.

However, the Court will allow Monarch's request for a change in the language of section six regarding the proposed notice's retaliation.  The Court will adopt Monarch's requested language in full to describe the state of the law more clearly on this issue, to read:

> Many employees fear being terminated for making a wage claim. **However, an employer cannot fire an employee or discriminate against an employee in any manner simply because they have filed a wage claim. This means if you decide to join this lawsuit, Monarch or any other employer, cannot base a term or condition of your employment (e.g. fire you, demote you, or cut your pay) on the fact that you participated in this lawsuit.**

Lastly, Plaintiffs request that Monarch be required to provide a list of all non-exempt nurses that Monarch employed that were subject to the meal break deduction and include full name, job title, home and email address, phone, employment dates and locations, and employee ID number.  Further, Quay requests that the last four digits of the Social Security number be provided for any class member for whom the mailed notice is returned as undeliverable, arguing that this information is necessary to obtain current contact information and is "routinely produced" by an employer for purposes of the notice process.

The Court will not order Monarch to provide telephone numbers, or the last four numbers of Social Security numbers given privacy concerns.  *See Lyons*, 2010 WL 3733565 at *6 (granting the plaintiff's unchallenged request compelling the defendant to produce,

inter alia, class members' names, job title, employee ID, and last known address, but not telephone numbers or last 4 digits of social security number).  Thus, within 10 days from the date of the order, Monarch will be ordered to provide an electronic list of all individuals who were employed by Monarch as non-exempt nurses who were subject to the automatic meal period deduction at any time during the class period, including each employee's first and last names, employee ID number, last known address, and dates of employment.  If, however, the notice sent by mail is returned as undeliverable, the Court will order Monarch to, within five days of written notice by Plaintiff's counsel, provide any such class member's most recent telephone number.  *See Chin*, 57 F. Supp. 3d at 1094–95.

## IV.    EQUITABLE TOLLING

The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances.  *Pecoraro v. Diocese of Rapid City*, 435 F.3d 870, 875 (8th Cir. 2006) (quotation omitted).  Equitable tolling is a "limited and infrequent form of relief."  *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014).  "The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that [they are] entitled to it."  *Wollman v. Gross*, 637 F.2d 544, 549 (8th Cir. 1980).  The party seeking equitable tolling must establish "(1) that [they have] been

pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way." *Smithrud*, 746 F.3d at 396 (citation omitted).

The court in *Olukayode v. UnitedHealth Group* explained that the relevant question in an FLSA collective action is not whether **plaintiff** diligently pursued her rights—because she is not seeking to toll the statute of limitations as it applies to her—but whether the **potential plaintiffs** have diligently pursued their rights, for they are the individuals the statute of limitations potentially could adversely affect. No. 19-1101, 2020 WL 1486058, at *2 (D. Minn. Mar. 27, 2020). The addition of more opt-in Plaintiffs indicates a general diligence on behalf of putative class members. Thus, only the circumstances surrounding the delay will be analyzed.

Plaintiffs present extraordinary circumstances. Both parties spent significant time in negotiations attempting to resolve the issue. While ultimately unsuccessful, these negotiations resulted in time passing where notice was not provided, and individuals did not have the knowledge or opportunity to file claims. Further, as Monarch changed their policy over a year ago, an ongoing violation has not tolled the statute of limitations allowing an entire year, of the two-year statute of limitations, to pass. Once Monarch changed the policy and no longer automatically deducted time, it is clear there could be no continuing violation of discouraging time corrections. As the policy was no longer in place, the statute of limitations was not tolled due to continued violations and thus began to run. *Redman v. U.S. W. Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998). An additional

delay was caused by the original filing of this motion for notice, followed by withdrawal and refiling with more declarants.

Because of these delays, the Court will grant Plaintiff's motion for equitable tolling. Unlike a Rule 23 class action, a class action under the FLSA does not toll the statute of limitations based on the date of the filing of the action. Rather, the state of limitations is only tolled for each individual plaintiff as of the date they consented to being named in the action—the date they "opted-in" to this case. Thus, the Court will toll the statutory period from the date of initial tolling on October 27, 2022, to the date mediation discussions closed, on August 1, 2022. (*See* Order Staying Case at 1, May 11, 2022, Docket No. 34.) For any plaintiffs who opted in prior to October 27, 2021—including those plaintiffs who consented to being named in the Complaint filed on August 5, 2021—their claims are timely for any injuries that accrued within the two years prior to their opt-in date. For any plaintiffs who opted into this action after October 27, 2021, their claims are tolled from October 27, 2021 to August 1, 2022.

## V. COMMUNICATION WITH CURRENT EMPLOYEES

At oral argument, the parties raised concerns over Monarch's communication with current employees. Any concerns regarding such alleged communications should be addressed by the Magistrate Judge.

**CONCLUSION**

Because the Plaintiffs have alleged sufficient facts showing that the putative class is similarly situated and there is some level of interest from other employees in joining the class, the Court will grant conditional certification.  The Court will also use its discretion to grant Plaintiffs' motion for court-supervised notice with the changes noted in this Order.  Most notable is the end date of February 14, 2022, when Monarch ended its automatic mealtime reduction policy.  Additionally, the Court will adopt Monarch's proposed language surrounding retaliation to best describe the state of the law.  Due to extraordinary circumstances, the statute of limitations will be equitably tolled from October 27, 2021, to August 1, 2022.  Finally, as the issue was not raised until oral argument, the dispute on contact with current employees will be referred to the Magistrate Judge.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Conditional Class and Notice to Putative Class Members [Docket No. 49] is **GRANTED in part**, as follows:

1.   Plaintiffs' FLSA class is conditionally certified;

2.   Court-supervised notice will be issued with the above-noted changes as to the timeframe, which will run from August 5, 2018, through February 14, 2022, and the retaliation protection language;

-18-

3.  Within 10 days from the date of the order, Monarch is to provide an electronic list of all individuals who were employed by Monarch as non-exempt nurses who were subject to the automatic meal period deduction at any time in the three years prior to February 14, 2022, including each employee's first and last names, employee ID number, last known address, and dates of employment;

4.  The statute of limitations will be tolled from October 27, 2021, to August 1, 2022; and

5.  The dispute on contact with current employees will be referred to the Magistrate Judge.

DATED:  August 3, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge