UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | | |
|---|---|---|
| APRIL QUAY, individually and on behalf of all others similarly situated<br><br>*Plaintiff*,<br><br>v.<br><br>MONARCH HEALTHCARE MANAGEMENT LLC,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 0:21-CV-01796 (JT/DLM)<br><br><br>COLLECTIVE ACTION<br>PURSUANT TO 29 U.S.C. § 216(b) |

**MEMORANDUM IN SUPPORT OF JOINT
MOTION FOR APPROVAL OF FLSA SETTLEMENT**

**I.
FACTUAL BACKGROUND**

April Quay ("Quay" or "Named Plaintiff") filed suit against Monarch Healthcare Management LLC ("Monarch" or "Defendant") on August 5, 2021, in the United States District Court for the District of Minnesota, Minneapolis Division. Quay alleged that Monarch violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and Minnesota state law as a result of its alleged failure to properly compensate their hourly-paid, non-exempt employees for all hours worked, including overtime hours. *See* ECF No. 1.

On August 25, 2021, Monarch filed its Original Answer, denying Quay's allegations and asserting numerous defenses. *See* ECF No. 10. Quay and Monarch (collectively, the "Parties") subsequently participated in their Rule 26(f) conference and filed their Report of Rule 26(f) Planning Meetings. *See* ECF No. 13. The next week, Quay filed her opposed motion

to conditionally certify a collective of all other similarly situated Monarch employees – that is, all hourly, non-exempt employees whose primary job was to provide direct care to patients and were subject to an automatic meal break deduction. *See* ECF No. 17. After the completion of briefing for the conditional certification motion, but before an order was entered, the Parties agreed to stay the litigation while they participated in mediation. *See* ECF No. 26.

On March 28, 2022, the Parties participated in their first mediation with the Honorable (Ret.) Karen Klein. *See* ECF No. 30. Although the mediation was not successful, the Parties agreed to continue the stay and scheduled a follow-up mediation. *See id.* On June 24, 2022, the Parties participated in their second mediation, again with the Honorable (Ret.) Karen Klein. *See* ECF No. 43. The second mediation was also unsuccessful. *Id.*

Quay ultimately withdrew her conditional certification motion (on file at ECF No. 17) and refiled an updated motion to reflect the current posture of the case and the inclusion of additional Opt-In Plaintiffs on September 15, 2022. *See* ECF Nos. 49–53. Monarch responded on October 6, 2022. *See* ECF No. 54. On February 8, 2023, the Court held a hearing on the motion during which the Parties presented their arguments regarding conditional certification.

On August 6, 2023, the Court granted Quay's motion and conditionally certified a collective action consisting of all non-exempt nurses who were subject to an automatic meal-period deduction while working for Monarch Healthcare Management LLC, anywhere in the United States, at any time from August 5, 2018 through February 14, 2022. *See* ECF No. 61. Pursuant to the Court's Order, Quay notified the putative collective members of the pendency of the lawsuit. By the close of the notice period, a total of 786 individuals returned their written consent forms to join the lawsuit. After the close of the notice period, the Parties again agreed

to mediate with the Honorable (Ret.) Karen Klein. The third mediation occurred on April 25, 2024 but the Parties failed to reach a resolution.

The Parties then engaged in the discovery process. Monarch served written discovery on Quay and seventy-five (75) Opt-In Plaintiffs and Quay served written discovery on Monarch seeking information on behalf of the FLSA Opt-In Plaintiffs and the Rule 23 Putative Class Members. Monarch produced a total of 132,215 discrete Bates labeled documents. Included in its document production was the time and pay data for Quay, the FLSA Opt-In Plaintiffs, and the Rule 23 Putative Class Members. Based on the data provided, Quay created multiple comprehensive damage models outlining the damages available to the FLSA Opt-In Plaintiffs and Rule 23 Putative Class Members.

While in the process of scheduling depositions, the Parties agreed to attempt resolution again with the Honorable (Ret.) Karen Klein. It was only after the fourth mediation that the Parties reached an agreement to resolve this matter on behalf of Quay and the FLSA Opt-In Plaintiffs. By this Motion, the Parties ask this Court to approve the Settlement Agreement and Release ("Agreement"), attached to the Motion as Exhibit 1, and find that it constitutes a fair and reasonable resolution of a *bona fide* dispute regarding all hours worked and the proper amount of overtime pay.

## II.
## SETTLEMENT TERMS

**A.   The Gross Settlement Fund**

The Parties have agreed that the Gross Settlement Amount will be Five Hundred and Seventy-Five Thousand Dollars and No Cents ($575,000.00). *See* Exhibit 1 ¶ 3.A. The Gross Settlement Amount fully resolves and settles the Lawsuit, including the claim for attorneys'

fees and costs to be approved by the Court, any and all amounts to be paid to or on behalf of Named Plaintiff and all FLSA Opt-In Plaintiffs, a service award to the Named Plaintiff, and the costs for a third-party settlement administrator. *See id.*

**B.      Distribution of Settlement Proceeds**

Within thirty (30) calendar days of the Court's approval of this Motion and the dismissal of this Lawsuit with prejudice, ILYM Group, Inc., the third-party settlement administrator selected by the Parties ("Settlement Administrator" or "ILYM") shall mail the Notice of Settlement with Settlement Checks, W-2s and W-9s by regular U.S. Mail to Named Plaintiff Quay and the FLSA Opt-In Plaintiffs ("Plaintiff Collective"). The Plaintiff Collective shall have sixty (60) days to cash or otherwise negotiate their respective Settlement Checks. *See* Exhibit 1, ¶ 5.

**C.      Settlement Allocation**

The Individual Settlement Awards for the Plaintiff Collective will be calculated by the Settlement Administrator as follows: (a) the Net Settlement Amount will be divided by the total number of workweeks[1] worked by the Plaintiff Collective during the Claim Period, and then (b) multiplied by the number of each individual member of the Plaintiff Collective's respective workweeks during the Claim Period to determine their *pro rata* share. *See id.* at ¶ 4.B.

---

[1] A "workweek" is defined as a normal seven-day week of work during the Claim Period in which, according to Defendant's records, the Collective Representative or an Opt-In Plaintiff worked at least one day.

### D. Releases

The Agreement provides for the following release:

> The Plaintiff Collective, on behalf of themselves and their current, former, and future trustees, heirs, representatives, successors, assigns, agents, administrators, executors, attorneys, and all others claiming by and through them, fully and forever release, waive, and discharge Defendant and each of its respective past, present, and future related or affiliate organizations, subsidiaries, officers, directors, employees, agents, principals, heirs, representatives, accountants, attorneys, auditors, consultants, insurers and re-insurers, and their respective successors and predecessors in interest, and all of their respective officers, directors, employees, fiduciaries, trustees and agents, and any individual or entity which could be jointly liable with Defendant (the "Released Parties") from the "Released Claims."
>
> For purposes of this Agreement, the "Released Claims" are defined as: all claims, rights, demands, liabilities, and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in the Lawsuit, including claims under the Fair Labor Standards Act ("FLSA"), claims under the theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits against Released Parties All members of the Plaintiff Collective will release their respective claims under this Section regardless of whether or not they negotiate or cash their respective settlement check(s).

*See id.* at ¶ 7. Importantly, the above release is narrowly tailored to only release the FLSA Opt-In Plaintiffs' wage related claims against Monarch. *See id.* Named Plaintiff Quay has agreed to a general release of claims against Monarch in exchange, in part, for payment of a modest service award. *See id.* at ¶ 8.

### E. Service Award to Named Plaintiff

Pursuant to the Agreement, and subject to Court approval, the Parties request the Court award Quay a modest service award of $5,000.00 for her role as the Named Plaintiff. This amount is to be received in addition to Quay's *pro rata* share of the Net Settlement

Amount and constitutes additional compensation for her efforts on behalf of the Plaintiff Collective and her execution of a general release. *See id.* at ¶ 3.B.

### F.     Attorneys' Fees and Costs

Collective Counsel seeks approximately one-third of the Gross Settlement Amount (or $195,000.00) as attorneys' fees. In addition to attorneys' fees, Collective Counsel also seeks reimbursement of their litigation costs and expenses not to exceed $50,000.00. The issue of attorneys' fees and costs will be addressed in greater detail below. *Id.* at ¶ 3.C.

## III.
## ARGUMENT & AUTHORITY

This Court previously recognized that there is disagreement between the circuits as to whether court approval is required for FLSA settlement agreements. *See Johnson v. Thomson Reuters*, No. 18-CV-0070, 2019 WL 1254565, at *2 (D. Minn. March 19, 2019). Out of an abundance of caution, the Parties ask this Court to review the FLSA settlement to "ensure that there is a *bona fide* dispute under the FLSA and that the settlement 'is a fair and reasonable resolution of [that] bona fide dispute.'"[2] *See id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. March 8, 2017). Here, the Parties will show that the Agreement

---

[2] Alternatively, Quay asks this Court to determine that its approval of the negotiated Settlement is unnecessary.

before this Court is a fair and reasonable resolution, reached as a result of contested litigation, and resolves a *bona fide* dispute between the Parties.

### A.  The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties

The Court's settlement-approval inquiry focuses on two issues. First, the Court must determine that a *bona fide* dispute exists. Then, the Court must scrutinize the proposed settlement to ensure it is fair and reasonable. *See Johnson*, 2019 WL 1254565, at *2.

#### 1.  A *Bona Fide* Dispute Exists

Named Plaintiff Quay contended that Monarch violated the FLSA by failing to pay her, and other similarly situated nurses, for all hours worked and the proper amount of overtime pay. Specifically, Named Plaintiff Quay alleged that Monarch automatically deducted a thirty (30) minute lunch break from the Plaintiff Collective's daily hours although Monarch knew or should have known that members of the Plaintiff Collective were regularly unable to take an uninterrupted 30-minute meal break each day.

Monarch denied (and continues to deny) these allegations. Monarch has at all times maintained that it paid its employees, including members of the Plaintiff Collective, in compliance with federal and state law and pursuant to their lawful timekeeping and overtime policies. Monarch maintained (and continues to maintain) that its employees were instructed to (and regularly did) complete a form to reverse the meal-break deduction in the event they were unable to take an uninterrupted lunch break and thus be paid for that time.

Simply stated, a *bona fide* dispute has existed (and continues to exist) between the Parties throughout the pendency of this case with regard to the number of hours worked each week and the proper amount of overtime pay.

## 2. The Proposed Settlement Is Fair and Reasonable

After determining that a proposed settlement is the product of contested litigation involving a *bona fide* dispute, courts must determine whether the settlement at issue is fair and reasonable. *See id.* In performing that inquiry,

> "[r]elevant factors for the Court to consider may include: the complexity, expense, and likely duration of litigation; the stage of the proceedings and the amount of discovery completed; the experience of counsel; any overreaching by the employer during settlement negotiations; and whether the settlement was the product of arm's-length negotiations between represented parties."

*Id.* at *4 (citing *Stainbrook*, 239 F. Supp. 3d at 1126).

Taking into consideration the five factors addressed above, the proposed settlement is fair and reasonable.

### a. *The complexity, expense, and likely duration of the litigation.*

This case has been on file since August 5, 2021. *See* ECF No. 1. The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time. The pleadings and status reports already filed with this Court demonstrate that this case has been, and would have continued to be, difficult and expensive to resolve. The Parties have now completed written discovery, but absent settlement, would have to take up to 150 outstanding depositions, complete expert reports and expert discovery, and engage in significant motion practice.

Absent resolution, Quay would move for certification of a class action pursuant to Rule 23 and Monarch would move to decertify the conditionally certified collective action. The Parties would likely file dispositive motions. Should this matter have proceeded to trial as a

class or collective action, the trial itself would take weeks to complete.³ Depending on the outcome, appeals would almost certainly follow.

      *b.*  *The stage of the proceedings and the amount of discovery that has taken place.*

The Agreement before this Court constitutes the culmination of over four (4) years of litigation. *See* ECF No. 1. The Parties have engaged in extensive motion practice and have completed written discovery. Monarch produced all relevant time and pay data on behalf of the Plaintiff Collective and the Rule 23 Putative Class Members. During the pendency of the Lawsuit, Collective Counsel also spent significant time conferring with Plaintiff Quay and the FLSA Opt-In Plaintiffs to complete discovery and to allow them to ascertain the potential range of recovery and negotiate in good faith. Moreover, resolution was reached only after participating in ***four*** (4) full-day mediations with the Honorable (Ret.) Karen Klein.

      *c.*  *The experience of counsel; any overreaching by the employer during settlement negotiations; and whether the settlement was the product of arm's-length negotiations between represented parties.*

The Parties are represented by experienced wage and hour attorneys who regularly litigate class and collective actions throughout the United States. *See* Declaration of Clif Alexander, attached as Exhibit 2. As stated above, the Parties participated in four (4) separate mediations at different points in the litigation. The first two mediations occurred early, before conditional certification, and the third mediation took place once the notice period expired. The fourth mediation took place after the Parties had an opportunity to engage in discovery to have a better understanding of the claims and defenses at issue. The Parties contend there

---

³ Even had Monarch successfully defended against class certification and obtained an order decertifying the Plaintiff Collective, the Parties and the Court would be left to try 786 individual cases.

is no evidence of collusion in this case, nor has there been any overreaching by Monarch. Collective Counsel and Defendant's Counsel support the Agreement as fair and reasonable, and all certify that it was reached at arm's length. *See id.*

### B. Attorneys' Fees

Under the terms of the Agreement, subject to Court approval, the Parties agree that Collective Counsel will receive $195,000.00, in attorneys' fees, and up to $50,000.00 for reimbursement of previously incurred litigation costs, which together represent payment of all reasonable attorneys' fees and costs associated with the Lawsuit. *See* Exhibit 1 ¶ 3.C.

"In common-fund settlements, the United States Court of Appeals for the Eighth Circuit has approved the percentage-of-recovery methodology in reviewing fee requests." *Isbell v. Polaris, Inc.*, No. 22-CV-1322 (WMW/DJF), 2023 WL 6662980, at *2 (D. Minn. Oct. 12, 2023) (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). The percentage-of-recovery method "permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in [producing] during the course of litigation." *Id.* (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996)).

Here, Collective Counsel seek an award of attorneys' fees in the amount of approximately 33.91% of the total settlement amount. "An award of one-third of the settlement is common in the Eighth Circuit, as courts have routinely awarded attorneys' fees ranging from 25% to 36% of a common fund under the percentage-of-the-fund method." *Id.* (citing *Larson v. Allina Health Sys.*, No. 17-cv-03835(SRN/TNL), 2020 WL 2611633, at *2 (D. Minn. May 22, 2020); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (approving attorneys' fees of 33% of the common fund); *Huyer v. Buckley*, 849 F.3d 395,

398-400 (8th Cir. 2017) (approving 36% fee request, listing cases)). Collective Counsel's request of 33.91% of the Gross Settlement Amount is reasonable and in line with fee awards regularly approved in the Eighth Circuit.

In addition to looking at the requested percentage, courts will often employ the "lodestar" approach as a cross-check to determine the reasonableness of the attorneys' fees award. *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). Here, Collective Counsel litigated this Lawsuit for more than four (4) years before resolving this matter on behalf of Plaintiff Quay and the 786 FLSA Opt-In Plaintiffs before the Court. In total, Collective Counsel has invested over 1,032.1 hours of time into the litigation of this matter, for a lodestar of $649,742.50. Because this amount is in excess of the requested fee award under the percentage-of-the-fund method, the lodestar cross check is satisfied. *See id.*

Under the Agreement, Collective Counsel is entitled to reimbursement of their out-of-pocket expenses incurred during the pendency of the litigation in an amount not to exceed $50,000.00. Collective Counsel has incurred costs of $47,840.90 to date, as detailed in the Declaration of Clif Alexander. *See* Exhibit 2.

## IV.
## CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court approve the Settlement Agreement and dismiss this action with prejudice.

Date:  September 5, 2025                    Respectfully submitted,

                                          **ANDERSON ALEXANDER, PLLC**

By:  /s/ *Clif Alexander*
      **Clif Alexander** *(Admitted Pro Hac Vice)*
      Texas Bar No. 24064805
      clif@a2xlaw.com
      **Austin W. Anderson** *(Admitted Pro Hac Vice)*
      Texas Bar No. 24045189
      austin@a2xlaw.com
      101 N. Shoreline Blvd., Ste 610
      Corpus Christi, Texas 78401
      Telephone: (361) 452-1279
      Facsimile: (361) 452-1284

**NICHOLS KASTER, PLLP**

By:  /s/ *Michele R. Fisher*
      **Michele R. Fisher** (#303069)
      fisher@nka.com
      4600 IDS Center, 80 South 8th Street
      Minneapolis, MN  55402
      Telephone (612) 256-3200
      Fax (612) 215-6870

*Attorneys for Named Plaintiff and the FLSA Opt-In Plaintiffs*

**MEAGHER + GEER, P.L.L.P.**

By:  /s/ *Melissa Dosick Riethof*
      **Melissa Dosick Riethof** (#282716)
      mriethof@meagher.com
      **M. Gregory Simpson** (#204560)
      gsimpson@meagher.com
      **Anthony W. Joyce** (#0400823)
      ajoyce@meagher.com
      33 South Sixth Street, Suite 4300
      Minneapolis, MN  55402
      Telephone (612) 338-0661

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Minnesota, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Clif Alexander*
Clif Alexander
